**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL HOAGLAND,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 1:12-CV-00973-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

Plaintiff Daniel Hoagland ("Plaintiff"), by attorney Marc Kalagian, seeks review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act. The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument. Both parties consented to magistrate jurisdiction. Docs. 11 & 12. The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, the Court affirms the Commissioner's determination.

**I.   Procedural History**[1]

Plaintiff applied for DIB and SSI benefits in September 2008, alleging disability as of September 14, 2007. DIB is paid to disabled persons who have contributed to the Social Security

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number. Where the applicable DIB and SSI regulations are virtually identical, only the DIB regulation will be identified.

1

program. 42 U.S.C. § 401 *et seq*. SSI is paid to disabled persons with low income. 42 U.S.C. § 1382 *et seq*. SSI is not paid retroactively from the date of the application, but DIB is retroactive up to twelve months, in this case to September 2007. 20 C.F.R. §§ 404.621(a)(1), 416.335.

Plaintiff's applications were denied in March 2009 and upon reconsideration in August 2009. After a hearing on November 30, 2010, ALJ Sharon Madsen denied his applications on January 27, 2011. Because the Appeals Council declined review, the ALJ's decision is the decision reviewed in this appeal.

## II. **Facts**

Plaintiff was born February 4, 1972. He had a ninth grade education and past work as a truck driver and material handler before alleging disability as of September 14, 2007. At this time he cited only back pain and hypertension.

In September 2007, Plaintiff began treatment with Central Valley Family Health. AR 226. Although treatment records from this source are not available until May 2008, Dr. Michael Thompson from this institution did complete state disability forms as early as September 2007. These forms stated that Plaintiff could not return to his regular or customary work. In the first form, Dr. Thompson gave a release date of October 2007 due to hypertension. AR 271. In the next disability form, from October 2007, the diagnosis was again "out of control" hypertension which "may impair his driving skills." AR 270. In November 2007, the release date was December 2007 and the diagnosis was now "unresolved" back pain, secondary to arthritis. AR 268. In the form from February 2008, the release date was March 2008, same diagnosis. AR 269.

On February 22, 2008, Plaintiff obtained abdominal and pelvis CT scans, ordered by Dr. Thompson. The impression was diffuse fatty infiltration of the liver, liver enlargement, and a 5mm right kidney cyst. In April 2008, Dr. Thompson completed a state disability form with a release date of May 2008, same diagnosis (back pain). AR 265-66.

The earliest available record from Central Valley Family Health, dated May 13, 2008, showed abdominal pain and uncontrolled hypertension.[2] On June 3, 2008, Plaintiff obtained

---

[2] Records from this source are mostly illegible. Plaintiff would see various physicians' assistants under Dr. Thompson. His medicines would include Vicodin for pain, as well as blood pressure and cholesterol medicines. The "disease of concern" would always be listed as hypertension.

another set of abdominal and pelvis CT scans, ordered by Dr. Thompson. AR 257-59, 324, 329. The impression was unchanged from the February 2008 scans. In June 2008, another state disability form gave a release date of September 2008, same diagnosis (back pain). AR 267.

In July and August 2008, another assistant saw Plaintiff to refill his hypertension and cholesterol medicines. AR 319-22. At all appointments up to this point, and at most subsequent appointments, he complained of abdominal pain at 9/10 or 10/10. On September 9, 2008, he saw a student nurse practitioner and also complained of a radiating chest pressure. He was put on a sample of a hypertension medication and blood work was ordered. AR 318. On September 21, 2008, he had a follow-up appointment regarding his blood work, but the note does not discuss the results. The note does indicate that Plaintiff again asked to be put on disability; the state disability form from this month gives a release date of November 2008, same diagnosis (back pain). AR 264. This is the final state disability form on record. At this appointment, Plaintiff obtained a refill of Vicodin but could not remember the names of his cholesterol or hypertension medicines. AR 317. At an appointment the following week (September 30, 2008), he now described the pain as including his abdomen, lower back, and extending to both legs. AR 316. Plaintiff repeated these complaints and obtained refills in October, November, and December 2008. AR 303, 305, 307, 309, 311, 312, 314.

Plaintiff applied for Social Security benefits on September 25, 2008. In October 2008, he completed a disability report. AR 223-30 (incorrectly dated October 2009 in index). In a telephone interview the same month, the interviewer noted that he "could hear [Plaintiff] wincing and grimacing in pain while being interviewed" and also "breathing heavily after the wincing, perhaps to help cope with the pain." AR 201-03. On November 3, 2008, Plaintiff completed a pain questionnaire. AR 205-07. He described a daily, stabbing or cramping pain which began March 10, 2007 in his right abdomen, right lower back, right hip, and right leg. The pain first began affecting his abilities in August of 2007. He could no longer "walk, drive, shop, socialize, work, [or] go places," and he had no daily activities except "some driving when necessary." He could stand for ten minutes at a time and sit for an hour at a time.

On January 16, 2009, Plaintiff saw consultative examiner James A. Nowlan Jr., M.D., an internal medicine specialist. AR 272-75. Dr. Nowlan reviewed Plaintiff's records, including office visits for back pain "with no cause given" and visits for high blood pressure, and a CT of the abdomen and pelvis taken a year and a half before that was normal aside from showing fatty liver. Plaintiff's history indicated that his blood pressure was controlled and that he has never used alcohol. He reported back pain for two years after job-related lifting. On examination, Plaintiff weighed 283 pounds, "was walking slowly" and "was in a considerable degree of pain," though he did not require an assistive device. He also examined Plaintiff's range of motion, observing moderate non-radiating back pain on hip joint movement, knee joint movement, and straight leg raising. Dr. Nowlan diagnosed muscle strain of the back, obesity, hypertension, and a fatty liver. He opined that Plaintiff could sit without limitation and stand and walk for two hours in an eight-hour day; lift ten pounds frequently and occasionally; and not climb, stoop, kneel, or crouch.

In February 2009, a state agency physician, adopting findings of a disability examiner, recommended that Plaintiff's application be denied. He opined that Dr. Nowlan's opinion was overly restrictive, given the mild restrictions in range of motion, intact reflexes, no noted spasm or deformity, and no need for an assistive device, and given that Plaintiff's pain was currently minimally treated with potential for improvement. AR 281-82. The physician wrote that Dr. Nowlan had observed a full lumbar range of motion, and straight leg raising had caused back pain "only" at 60 degrees; motor strength was 5/5, reflexes were 2+, and sensation was intact, although gait was slow. There was "little objective evidence" of Plaintiff's alleged level of pain. The state agency physician also referred to the most recent state disability form by Plaintiff's treating physician, Dr. Thompson, who opined in September 2008, in the last disability form on record, that Plaintiff would be able to return to his regular and customary work in November 2008. *See* AR 264. Although Dr. Thompson and Dr. Nowlan were not completely sure of the etiology of the pain, the reviewing physician considered the full range of motion and normal neurological exam to be "more consistent with a muscular strain and [degenerative disc disease]," made worse by obesity. Furthermore, the hypertension, heart issues, and liver issues seemed nonsevere. The state agency physician found that Plaintiff could lift ten pounds occasionally and frequently; could sit at

4

least six hours and stand and/or walk two hours in an eight-hour day; and, due to back pain and obesity, could only occasionally balance, stoop, kneel, crouch, crawl, or climb rams or stairs; he could never climb ladders, ropes, or scaffolds. AR 276-280.

In January, February, March, and April 2009, Plaintiff again saw medical assistants who recorded complaints of back pain, sometimes accompanied by leg and stomach pain. He again obtained refills of Vicodin for pain, Diovan for hypertension, and now Ambien for insomnia. AR 289, 291, 293, 295, 297, 299, 301.

On May 4, 2009, a cervical spine CT was negative. AR 445. On May 5, 2009, a lumbosacral spine CT was normal. AR 352, 450. According to the treatment note from May 10, 2009, Plaintiff indicated that the "pain meds are working as he is able to function—NOT well enough however 'to get a job'." The note mentioned that his back was difficult to assess because Plaintiff experienced acute pain with any motion." AR 287.

On May 20, 2009, Plaintiff completed another disability report as part of his appeal of his initial denial. AR 213-19. He stated his illness had gotten "progressively worse" since he had seen Dr. Nowlan. He believed that the examination itself was the cause: "While administering his tests he twisted my back like a chiropractor back and forth and he also tried to put my knees to my chest." Specifically, his back pain was worse, the tingling in his arms and legs was worse, and he had severe headaches, sharp pains in the right ribcage, and sharp pains from his mid-back to the left side of his head.

In July 2009, a state agency physician denied Plaintiff's application on reconsideration. AR 336-337. The physician observed that in May 2009, the treating physician had found that a CT scan of the neck and back were negative, and that pain made his back difficult to assess. The state agency physician wrote, "It appears that [claimant] suffers from a back strain & is taking pain meds. A [sedentary] RFC seems very restricted. Currently, [medical evidence of record] does not support the [sedentary] RFC, agree [with a] Light RFC, since we really don't have a [medically determinable impairment]." Plaintiff could lift 20 pounds occasionally and 10 frequently; could stand and/or walk for six hours and sit six hours in an 8-hour workday; and could perform postural occasionally. That same month, a brain CT, performed for headaches, was negative. AR 356.

Two months later—on September 9, 2009—a view of the thoracic spine confirmed thoracic degenerative disc disease, showing tilting of the thoracic spine to the right with mild spurring of the thoracic spine diffusely. A right-side CT scan of the ribs was normal. AR 357-359. Examination notes from November 5, 2009 reference the May, July, and September CT scans, and show that Plaintiff continued to have back pain. An MRI was to be scheduled, and in the meantime a diagnosis of spondylosis was possible. AR 346.

On October 6, 2009, Plaintiff had an "initial orthopedic evaluation" through the Home Garden clinic. AR 437. Treatment at this clinic was provided by physician's assistant Roger Talob, with dictated treatment notes also bearing the typed name of D. Lancy Allyn, M.D. In October 2009, an HLA-B27 test suggested a negative result for ankylosing spondylitis. AR 585. On October 14, 2009, the note ordered a thoracic spine MRI to rule out nerve root impingement or chronic stenosis. *Id.*, AR 426. Because previous x-rays "weren't of very good quality," the note ordered new lumbar and thoracic x-rays. AR 432. It said that labs had been performed to rule out ankylosing spondylitis and rheumatoid arthritis, and were "essentially inconclusive." AR 433.

In an appeals-related disability report from October 2009, Plaintiff indicated that he was still experiencing more pain. AR 234-40. He stated that his condition had worsened due to degenerative disc disease, and he was awaiting a test on ankylosing spondylitis.

In January 2010, the MRI was denied. The physician's assistant resubmitted the MRI request. AR 429. On January 28, a coccidioidomycosis test was negative. AR 581. In late January, Plaintiff was recommended a trial of epidural steroid injections, and would be weaned off Vicodin while attempting Neurontin, Tramadol, and Soma. AR 427. On February 3, 2010, a CT scan was ordered instead of an MRI to facilitate the injections. Plaintiff reported decreased pain from Neurontin. AR 421-23.

In February 2010, a CT of the thoracic spine revealed Schmorl's nodes in levels from T7 to T12, diffuse osteophytic formation, and otherwise no abnormalities. AR 447. On February 17, 2010, the doctor ordered a test to rule out ankylosing spondylitis. AR 418-420. By March 17 or 18, 2010, Plaintiff's pain management referral was approved and the appointment was pending. AR 414-416, 407-412 (duplicates).

On April 29, 2010, Plaintiff saw Dr. J.R. Grandhe with Central Valley Pain Management, who diagnosed thoracic radiculitis secondary to possible degenerative disc disease; ankylosing spondylitis was "possible," so a referral to a rheumatologist should be made for consultation. AR 345, 403-405 (referral); 443-44. In the meantime, Plaintiff was instructed to "maintain medication management with his primary care physician and he is also encouraged to do home therapy program with mild massages, application of warm packs, and pain cream."

On May 6, 2010, Mr. Talob, the physician's assistant from Home Garden, apparently discussed the pain management appointment with Plaintiff. In his note, Mr. Talob writes that Plaintiff has "possible seronegative ankylosing spondylitis" and has "significant degenerative disease throughout his spine," which is "most likely ankylo and spondylitis." He states that "corticosteroid injections ES1 would not help this patient." He would make the referral to a rheumatologist. He further wrote that Plaintiff's condition was permanent and stationary and most "most likely" permanently disabled. AR 399-401.

Three months later, an August 3, 2010 note from Home Garden said that x-rays suggested "possible anklosing spondylitis," though the HLBA-27 test had been negative. AR 386, 393.

On September 28, 2010, after unrelated delays (AR 389, 381, 377), Plaintiff told a nurse from Adventist Health as well as Mr. Talob from Home Garden that he had seen a rheumatologist. AR 343, 373. The record does not contain any notes from the rheumatologist, only Plaintiff's oral report that the rheumatologist diagnosed him with fibromyalgia and referred him back to the Home Garden Clinic for treatment, making no specific recommendations. Plaintiff had no subsequent appointments with a rheumatologist.

On November 30, 2010, Plaintiff had his disability hearing before ALJ Madsen. AR 35-75. His attorney failed to appear, but he chose to proceed. Plaintiff testified that he lived in a house with his girlfriend and his seventeen-year-old son. He had a driver's license but did not drive; his girlfriend took him everywhere. He had last completed ninth grade and had a Class A driver's license. He had very limited daily activities, visiting family or friends once every three months, with difficulty sitting for a long period of time. In a typical day he lays in a couch or bed watching TV; it hurts to walk to the bathroom. Describing his impairments, Plaintiff had mid-back pain,

between his shoulder blades, coming around to his right rib cage. He felt pain when he took a deep breath. He had numbness and tingling in his fingertips and feet. Plaintiff said that Dr. "Tallot" (perhaps meaning P.A. Talob) had identified problems with his T5 and T6 disk. He took Vicodin, Soma, morphine, and Neurontin, as well as sleeping medicine, blood pressure medicine, and Xanax for anxiety. He said that he had been "turned away" for back injections.

In January 2011, the ALJ issued her decision denying Plaintiff's application. Plaintiff sought review by the Appeals Council. In January 2012, Plaintiff's attorney sent updated records to the Appeals Council. These include new records from Adventist Care from October 2010 through November 2011.[3] AR 516-569. The note from February 2011 shows that Adventist sought referrals to pain specialists and an MRI. AR 555-561, 547-548. Monthly visits with pain management were recommended in June 2011. AR 544. A May 2011 brain CT was unremarkable. AR 601. A June 27, 2011 lumbar x-ray was compared with one from September 2010; it showed a "normal lumbar spine" with moderate spondylosis in the lower thoracic spine and aortic calcification. AR 603. A thoracic spine x-ray compared with one from September 2010 showed unchanged levoscoliosis with mild spondylosis. AR 542. The note from July 2011 indicates that Oxycontin "does not help much" and that Plaintiff continued taking four Vicodin a day. *Id*. An MRI could not be approved. In July 2011, insurance denied Oxycontin. AR 541. Plaintiff reported paresthesias in all extremities and period blackouts. AR 538. In October 2011, he reported severe scapular pain after doing housework. AR 536.

Candice Golez, M.D., is one of the physicians at the Adventist clinic. Like other physicians from the clinic, Dr. Golez did not personally conduct Plaintiff's visits, but she did countersign progress notes. The first progress note with Dr. Golez's countersignature is dated November 2010. AR 568. Plaintiff's first actual appointment with Dr. Golez was in January 2011. AR 534. In April 2011, she completed a state of California disability assessment form. AR 553. She completed a physical RFC questionnaire on November 22, 2011. AR 506-10. In the latter document, she documented his symptoms and diagnoses, citing "radiographs" for his spondylosis and scoliosis.

---

[3] According to the table of contents for the administrative record, the record also contains Home Garden records from 03/2010 through 11/2011. However, the records are a repeat of records from 03/2009 through 11/2010. Exhibit 12F (AR 461-505).

8

According to her assessment, which she said covered back to November 2009, he could not stand or walk for any period of time, and could sit for five minutes, with legs elevated, and would need unscheduled breaks. He could lift only less than ten pounds, and only occasionally. Her assessment contained a variety of additional limitations. On the same date, she also completed a fibromyalgia RFC questionnaire. AR 511-515. Clinical findings were widespread point tenderness, and x-rays showing spondylosis and levoscoliosis; he had an atherosclerotic aorta and a range of symptoms.

In December 2011, Dr. Golez ordered a lumbar spine MRI for comparison with the May 2009 CT scan. The current findings were chronic right L5 spondylolyses without spondylolisthesis or acute signal changes in the contralateral pars interarticularis, and relatively mild changes at the other levels of the lumbar spine. AR 586-587.

On April 17, 2012, the Appeals Council denied Plaintiff's request for review, explaining that the newly-provided records related to a period after the ALJ's January 2011 decision and could only be addressed by filing a new disability application for that time period.

**Testimony of Vocational Expert**

At the hearing, Thomas C. Dachelet testified as a vocational expert. For his testimony, he described the jobs available to persons with the limitations posed in the parties' hypothetical questions. For each hypothetical, Mr. Dachelet first opined whether these limitations would foreclose Plaintiff's past work. If so, he then considered Plaintiff's vocational factors (age, education, and past work) and opined whether these factors permitted adjustment to other work. *See* 20 C.F.R. §404.1560. For these vocational factors, he assumed that Plaintiff was a "younger person" (under age 50), with a limited education and past work as a truck driver (medium—heavy or very heavy as performed; 3) and material handler (heavy, 3).[4]

As relevant here, the ALJ's second hypothetical—the one that the ALJ ultimately relied upon in her decision—described a person who could lift and carry 10 pounds frequently and 20 pounds occasionally; could stand, sit, and walk six hours in an eight-hour day with a sit/stand option; and could only occasionally stoop, crouch, crawl, or climb, or reach overhead bilaterally.

---

[4] In the parenthetical, the strength rating captures how much exertion the job requires and whether this is occasional (up to a third of a day), frequent (two thirds), or constant. The Specific Vocational Preparation number ranks, from one to nine, how long it takes to learn the job. Dictionary of Occupational Titles (4th ed.1991) Appendix C.

Mr. Dachelet stated that the person could not perform Plaintiff's past work. However, he could do representative occupations such as linen supply load builder (light, unskilled—job base eroded to 15,000 in California); garment sorter (light, unskilled—eroded to 7,000 in California) and ampoule filler (light, unskilled—eroded to 7,000 in California).

The ALJ's third hypothetical—corresponding Dr. Nowlan's RFC assessment, with certain additional limitations—described a person who could lift and carry ten pounds occasionally and frequently; could sit for six hours and stand or walk for two hours without a sit-stand option; and had the same postural limitations described above. Mr. Dachelet stated that the person could perform "the full world of sedentary," including ampoule sealer (sedentary, unskilled—3,045 in California); loader of semi-conductor dies (sedentary, unskilled—2,710 in California); and stuffer (sedentary, unskilled—595 in California). The entire category of sedentary, unskilled work represented 84,258 persons employed in California.

### III. Disability Standard

To be disabled, a claimant must have impairments which foreclose all meaningful employment for at least twelve months. 42 U.S.C. § 1382c(a)(3). To make the disability determination more uniform and efficient, ALJs follow a five-step "sequential evaluation process," stopping once they reach a dispositive finding. 20 C.F.R. §§ 404.1520, 1594(b)(5). The claimant has the burden for the first four steps. *Terry v. Sullivan,* 903 F.2d 1273, 1275 (9th Cir.1990).

The sequential process begins with a "*de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996). At steps one and two, the ALJ confirms that the claimant is not meaningfully employed and in fact has severe impairments. Once a claimant passes this screening, the remaining steps examine whether he is disabled.

The claimant may prove this in two ways. One way—considered at step three—is to have a condition that is disabling by definition. *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1 (the "listings"). Failing this, he must present evidence of his residual functional capacity ("RFC," the most he can do despite his limitations). The ALJ determines this RFC, then at steps four and five applies this to the world of work. If the claimant's RFC forecloses his past work, and if the Commissioner cannot

satisfy her burden to identify a significant number of other jobs that the claimant could learn, then the claimant is disabled.

### IV. **The ALJ's Decision**

The ALJ followed the five-step sequential evaluation process outlined above. At steps one and two, the ALJ found that Plaintiff's claim was not clearly meritless: he had not worked since the alleged date of disability and he had severe impairments capable of lasting twelve months. These included obesity, mechanical back pain, thoracic degenerative disc disease, and fibromyalgia, though not gastroesophageal reflux disease, fatty liver, hyperlipidemia, or hypertension.

However, the ALJ found that Plaintiff could not prove he was disabled. At step three, his condition did not meet or equal a "listing," and at steps four and five his RFC and vocational profile did not foreclose meaningful work. Specifically, his RFC corresponded to the physical limitations described by the second state agency review in July 2009, with additional limitations in light of the CT scan which became available in September 2009. Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could sit, stand, and/or walk 6 hours in an 8-hour workday with a sit/stand option; and could only occasionally stoop, crouch, crawl, climb, or reach overhead bilaterally. Although this RFC foreclosed his past work, the Commissioner identified a significant number of other jobs that he could learn given his age, education, and experience—namely, those that the vocational expert described in response to the second hypothetical, above.

On appeal, Plaintiff argues that the ALJ committed two errors in assessing his RFC. First, he lacked substantial evidence to reject the RFC opinion of consultative examiner Dr. Nowlan and of treating physician Dr. Golez. Second, the ALJ improperly found that Plaintiff's subjective complaints were not credible.

### V. **Scope of Review**

Congress has provided a limited scope of judicial review of a decision to deny benefits. This Court may review only whether the decision applied the proper legal standards and made findings supported by substantial evidence. *Bray v. Comm'r*, 554 F.3d 1219, 1222 (9th Cir. 2009). Substantial evidence is more than a scintilla but less than a preponderance; it is such relevant

11

1 evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. Where the
2 record as a whole can support either grant or denial, the Court may not substitute its judgment. *Id*.

3 **VI.  Discussion**

4     **A.  Plaintiff's Failure to Summarize Evidence**

5 Plaintiff's brief departs from the requirements in the Court's scheduling order, in that it
6 does not provide a summary of the relevant medical evidence. Sched.Order, ¶ 11(b). Instead of a
7 summary, Plaintiff "stipulates that the ALJ fairly and accurately summarized the medical and non-
8 medical evidence of record, except as specifically stated herein." The remainder of the brief
9 merely adverts to some medical evidence.

10 A search of court records shows that attorneys from the Rohlfing & Kalagian law firm
11 routinely use this phrase in their opening briefs. Several years ago, this Court had occasion to
12 explain to a different attorney from the Rohlfing firm the importance of providing a summary of
13 facts. *Mort v. Astrue,* 1:07CV01478–AWI–SMS, 2008 WL 2705181 (E.D.Cal. July 8, 2008).
14 Another judge recently reiterated this point. *Damngam v. Colvin*, 1:12-CV-00362-BAM, 2013 WL
15 3006414 (E.D. Cal. June 14, 2013).

16 Here, Plaintiff filed his opening brief prior to the recent *Damngam* decision. Therefore, the
17 Court instructs Plaintiff's attorney to conform to the *Damngam* and *Mort* decisions in future briefs.
18 Briefs that do not substantially comply with these requirements may be stricken.

19     **B.  The ALJ Gave Sufficient Reasons to Reject Plaintiff's Subjective Testimony**

20 An ALJ is not "required to believe every allegation of disabling pain" or other non-
21 exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*,
22 885 F.2d 597, 603 (9th Cir. 1989). Absent affirmative evidence of malingering, and assuming
23 impairments that could reasonably give rise to the reported symptoms, the ALJ must assess the
24 credibility of the complaints. *See* 20 CFR 404.1529(c); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,
25 883 (9th Cir. 2006). These credibility findings must be "sufficiently specific to permit the court to
26 conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278
27 F.3d 947, 958 (9th Cir. 2002). Factors to consider include the claimant's daily activities; the
28 location, duration, frequency, and intensity of the symptoms; precipitating or aggravating factors;

and palliative measures taken, including medication (type, dosage, effectiveness, and side effects), other medical treatment, and non-medical measures such as lying down or changing positions. *Id*. An ALJ may also consider ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony that appears less than candid. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

As the ALJ pointed out, the objective medical evidence did not support the alleged severity of Plaintiff's symptoms. AR 24-27. "Although lack of medical evidence cannot form the sole basis" for discounting testimony, it is a factor that the ALJ can consider in his credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see* 42 U.S.C. § 423(d)(5)(A). Plaintiff had normal or negative lumbar and cervical spine CTs, and his thoracic spine CT showed only mild spurring and tilting to the right. AR 25-26, 352-54, 359, 445, 450. In addition, Plaintiff's treatment records were generally minimal, noting prescription refills as the reason for a number of his visits. AR 26, 289, 293, 295, 297, 301, 305, 307, 314. Substantial evidence supports the ALJ's finding that the objective medical record did not support Plaintiff's claims of disabling impairments. *Id.*

Plaintiff argues that the ALJ discounted Plaintiff's complaints solely due to the lack of objective evidence. However, the ALJ cited other factors as well. The ALJ noted that "[n]o examining or treating source has found him to be disabled." AR 26. In this, the ALJ was correct. She also noted that Plaintiff had received "limited treatment." This observation was supported by substantial evidence. As the ALJ noted, Plaintiff's hypertension was controlled on medication, he received no specific treatment for his fatty liver, and he was not prescribed any medication for his hyperlipidemia. AR 24. Plaintiff was referred for back injections, and while he testified that he was "turned away" from receiving injections, 57-58, the note from pain specialist Dr. Grandhe does not discuss this, but simply discusses referring Plaintiff to a rheumatologist. AR 399-401. It is unclear whether Dr. Talob corroborates Plaintiff's perception or simply repeats it. AR 443-44. Plaintiff saw a rheumatologist once, two months before the ALJ hearing, but there is no record of this single visit and there were no subsequent visits. His treatment records in the following months indicate that the goal was to wean Plaintiff off his current narcotic pain medications and for him to go back to work. AR 26, 342, 362. The treatment that he received for his spinal condition was limited to

medication and recommendations for home exercises.

Credibility determinations "are the province of the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which is supported by substantial evidence in the record, this Court does not second-guess that decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citation omitted).

### C. The ALJ and Appeals Council Properly Considered Medical Expert Opinions in Formulating Plaintiff's RFC

Plaintiff asserts that the ALJ gave insufficient reasons to favor the second (reconsidering) state agency physician's opinion over those of Drs. Nowlan and Golez.

"[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, as long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). To reject the opinion of a treating physician that has been contradicted by that of an examining or non-examining physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence in the record. *Orn v. Astrue*, 495 F.3d at 633. Possible reasons may include (1) the examining relationship; (2) the treatment relationship, including (a) the length of the treatment relationship or frequency of examination and the (b) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that support or contradict a medical opinion. 20 C.F.R. § 404.1527(d). As to supportability, a medical opinion may be disregarded to the extent it is premised on discredited complaints. *Morgan*, 169 F.3d at 602.

#### 1. Dr. Nowlan

Even if the ALJ had accepted Dr. Nowlan's opinion, Plaintiff would still be found not disabled. When asked about a hypothetical summarizing Dr. Nowlan's RFC assessment, the vocational expert testified that Plaintiff would be able to perform all unskilled, sedentary work. For this reason alone, Plaintiff's argument lacks merit.

In any event, the ALJ had sufficient reason to prefer the state agency physician's opinion, based on the fact that this opinion was more consistent with the record. On initial review, the state agency physician characterized Dr. Nowlan's opinion as overly restrictive, given the mild

restrictions in range of motion, intact reflexes, no noted spasm or deformity, and no need for an assistive device, and given that Plaintiff's pain was currently minimally treated with potential for improvement. AR 281-82. The physician wrote that Dr. Nowlan had observed a full lumbar range of motion, and straight leg raising had caused back pain "only" at 60 degrees; motor strength was 5/5, reflexes were 2+, and sensation was intact, although gait was slow. The state agency physician also referred to the most recent state disability form by Plaintiff's treating physician, Dr. Thompson, who opined in September 2008, in the last disability form on record, that Plaintiff would be able to return to his regular and customary work in November 2008. On reconsideration, the physician also had the benefit of new CT scans from May 2009, which were negative. In determining that Plaintiff's RFC was more severe than that described by the state agency physician, the ALJ also considered a September 2009 CT of Plaintiff's thoracic spine, which revealed only mild spurring and tilting of the thoracic spine to the right.

### 2.     **Dr. Golez**

Plaintiff submitted new evidence, including the opinion of Dr. Golez, to the Appeals Council. The Appeals Council denied review, finding that this evidence did not relate to the time period prior the ALJ's decision. On appeal, this Court must consider any evidence submitted to the Appeals Council, not in reviewing the Appeal's Council's denial of review but in reviewing the decision of the ALJ for substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012).

The treatment records Plaintiff submitted from 2011 and early 2012 document what was already in the record: that Plaintiff experienced back pain and would have his medication refilled. AR 520-23, 535-62. The opinion from Dr. Golez was dated November 2011, almost a year after the ALJ's decision. While she states that her opinion is retroactive to 2009, she first saw Plaintiff in January 2011, the same month of the ALJ's decision finding Plaintiff not disabled. Her signature first appears on Plaintiff's records in November 2010, the month of the hearing. Furthermore, while Dr. Golez indicated significant limitations on the form she completed, these limitations were inconsistent with Plaintiff's testimony. Dr. Golez reported, for example, that Plaintiff could only sit for 5 minutes at a time, and could not stand for any length of time. AR 508 (can stand for 0

minutes), 513 (same). Yet, Plaintiff sat for about thirty minutes during his hearing and testified that he could stand for about ten minutes. AR 59-60. She also noted that his prognosis was poor and he was unable to function, yet a treatment record from another physician in November 2010, right before the ALJ's decision, indicated that one of his goals was to go back to work which would suggest a good prognosis and good functioning. AR 342, 506. Dr. Golez also noted that Plaintiff's depression and anxiety affected his physical condition and that he had a severe limitation in his ability to deal with work stress, but Plaintiff testified at his hearing that he received no treatment from a mental health professional, indicating his mental limitations were not as severe as alleged. AR 61, 507-08. Dr. Golez's opinion was provided almost a year after the relevant period, is unsupported by the record, and does not change the fact that the ALJ's RFC finding was supported by substantial evidence.

## VII. Conclusion

The ALJ applied appropriate legal standards and substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled. Accordingly, the Court hereby AFFIRMS the agency's denial of benefits. The Clerk of Court is directed to enter judgment for Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 14, 2013**           /s/ Sandra M. Snyder
                                       UNITED STATES MAGISTRATE JUDGE